This case is 24-4085 Earthgrains Baking Companies v. Sycamore Family Bakery. Mr. Heidemann. Good morning, Your Honors. My name is Justin Heidemann of the law firm Heidemann & Associates, and today we appear at the pleasure of the appellant, Sycamore Family, LLC. Your Honor, it is my sincere hope that the following argument may be found pleasing by this Court. We would request a rebuttal of three and a half minutes. The appellants posit that two specific exchanges from the trial court highlight the error committed in this case. In the amended judgment, Appellants Appendix Volume 1, 204-206, the trial court states, pursuant to the orders entered in this case, the verdict of the jury filed on April 13, 2012, the July 25, 2014 order and judgment of the United States Court of Appeals for the Tenth Circuit, and the Court's memorandum decision and order entered on August 21, 2015, all claims in this lawsuit having been resolved, tried, or stipulated. And this Court amends the July 16, 2012 final judgment and enters the amended final judgment as follows. That order concludes with this statement. Each of the previous orders and decisions entered by this Court in this case remain in effect, except for otherwise reversed by the Tenth Circuit. Nine years later, the trial court, in response to Appellant's motion to terminate the judgment, enters the following statement. Quote, in this case, the amended final judgment amended and superseded the final judgment. Defendants appealed the 2012 final judgment and obtained a favorable decision from the Tenth Circuit in validating the 2012 final judgment and requiring this Court to enter the amended final judgment. That language is found in the Appellant's Appendix Volume 2, 236 through 240, specific language 237. These cannot be read to be consistent. And as a result of these statements, it is clear where the error lies in this case. I would note for the Court that on Issues 1 and 3, the parties agree as to the standard of review. But as to Issue 2, the standard of review is in contention. I will address that through the course of this argument. However, I would start with the simple fact that if the Court follows the State of Utah's plain language law, which this Court has indicated in its prior appeal in this matter, that it does so by simply looking at the plain language of the statute, that this case terminates as a result or with the result that reverses the trial court's decision. In this case, there is a specific statute at play that requires that from the date of the original judgment, there is an eight-year time frame. So the 2015 judgment would last for eight years? No, the 2012 judgment would last for eight years. So what in that plain language of the statute saying that a judgment lasts for eight years would apply only to the 2012 judgment? Even if it survives in addition to the 2015 judgment, is the 2015 judgment a nullity? No, it is not, Your Honor. The 2012 judgment or the language of the statute specifically states that the original judgment uses those two words in conjunction. Yes. Can be renewed? Yes. There is two statutes. The one you were referring to doesn't use the word original. Correct. And so it says a judgment lasts for eight years. Correct. And the caption of the 2015 document has the word judgment in it, right? Specifically, Your Honor, I am referring to Section 78B-5202. And what that expressly states in subparagraph 1B is that the entry of an order renewing a judgment maintains the date of the original judgment. And that's not the statute I'm asking you about. I'm asking you about the one you were talking about just a moment ago. Not the renewal. Let's say there is no renewal. The statute that you were just referring to saying that a judgment lasts for eight years. Correct. Why wouldn't the 2015 document, it is a judgment, right?  So why doesn't it last for eight years, even if it can never be renewed? Excellent question. Your Honor, I think the answer to that is because of the fact that the renewal statute identifies specifically the original time frame. And, in fact, it's interesting. In a case cited by counsel, the, I'm going to make the, or get the name wrong, so I'll point to it. It is this case cited at the very end. It's the, here we go, the Juergensen v. Ford case. Juergensen v. Ford goes through and actually identifies the public policy reason that answers the court's question. The judgment itself operates to create effectively a collection effort. And in this case, the 2015 effort would go into effect. But as Juergensen points out, the operation of the original judgment is what creates an issue associated with the property. And as a result of the fact that there is a necessity to be able to identify ownership and encumbrances on property, we go to the original judgment, not the   Let's say that that is, we are 100 percent persuaded. Well put. It is, it sounds very persuasive. But you just told us that we have to, you know, we can't use our own policy preferences. We can't go behind the words of the statute.  And the words of the statute, not the renewal statute, just the duration of the judgment, it sounds to me pretty unequivocal, pretty unambiguous, that judgments last for eight years. And so even if it maybe was counterproductive by the legislature to say that any judgment lasts for eight years, we're stuck with the plain language of the statute. And this goes to the second point I was about to make, and again, I think it's an excellent question. I've spent hours tolling or toiling over this particular issue. Toll is on my mind, apparently. But in this particular instance, I think there's one date that gets overlooked. And it's one that cannot be. And that's the March 16th, or 6th, 2014 date. Your Honor, the charging order was entered that day. The amended judgment was entered in 2015. The amended judgment only amended one line. And it just simply identified that there was a LLC forfeiture with regard to two states, or with only one state, California, instead of two, Nevada and Arizona. It didn't change any economic elements. And the reason that's critical is because of what happens in 2018. In 2018, on November 2nd, the receiver is appointed, and the court expressly says, in reliance on the charging order and the failure to collect, I find it necessary to put the receiver in place. The charging order predates the amended judgment. And so as a result, it's clear to me that although the amended judgment amended an element of the judgment, it did not change the fundamental nature of the judgment, which was the amount to be collected. And, in fact, that judgment is what is relied upon. Otherwise, the charging order is a legal nullity. If we have to think, though, in other contexts that an amended judgment supersedes that which preceded it, you obtained a reversal in part in the Tenth Circuit. It goes back, and the district court had no choice but to enter a new judgment that conformed with what the case was now about. I 100% agree. And so it reaffirms what it found before and fixes what the Tenth Circuit said was erroneous. But you'd think that judgment, that document, is what the plaintiff needs to go show an enforcement officer, or maybe you came back up to the Tenth Circuit, whatever. Let me make sure I understand the court's question. I think I do. I agree 100% that the new judgment supersedes the old. What I don't agree with, and what I think the legislature of the state of Utah does not agree with, is that it changes the timing for the renewal period. But in most other contexts, the federal rules, later in time, judgment would be the operative judgment. That's what we would look at. I agree. And you're saying because of the statutory language, that's out the door. Well, and I think, Your Honor, it's also important to take a look at what happens with regard to the construction in the case I just referenced. I keep saying the name incorrectly. Here we go. Juergensen case. I want to say Yazd, and it's Juergensen. Yazd is a famous Utah case. In that particular instance, the court identifies that you only get one additional eight-year period. So if you, when your judgment is entered, eight years later, if you renew it, you don't get to renew again. You get two periods of time. And the court sets that period of time based specifically on that statute. And the statute says the original judgment. It does, if they wanted to say a superseded judgment, if they wanted to say an amended judgment, they would have. But they did not. Could Earthgrains have been pursuing collection efforts during the appeal to the Tenth Circuit? They did. They did. If you look at, in fact, that's one of the specific elements. If you look at the November 15, 2019 report, which is the 14th status report, the court ordered $1.1 million be distributed. And then we find out that on December 20, 2021, there was a distribution of $1.375 million. And I'm talking about between 2012 and 2014. Yes, they did. That's where these funds came from. Okay. The court entered during the, well, and to be very, very specific, there was an appeal that was taken in 2020. And when that appeal was filed, there was only four months left on the statute of limitations, or on this renewal period. That notice created a circumstance where there was a 57-day complete stay. But this court affirmed in part and denied in part. And what it affirmed was that the liquidation stay was still in effect, but the collection stay was never in effect after that order. So they had the ability to collect at all times. Okay. Let me ask my question a little differently in the form of a hypothetical. Let's say you've appealed the 2012 final judgment, and for whatever reason, the Tenth Circuit doesn't get an opinion out for eight years. And I think I hear you saying that the plaintiff had to enter its collection actions during that period, or even though there was not a decision from the court of appeals would have to file for renewal. Okay, no, Your Honor, that's not what I'm saying. If you look at the Gilead case, the Gilead case is very clear that whenever there are stays vis-a-vis operation of law, which is the plain language of the statute, or whenever there is a period where there's an adverse ruling that precludes an activity, that equals an equitable tolling event. And I'm sorry, I said Gilead, and I should have said Stinson. That's the Stinson case. And so those periods of time would allow for tolling, but that didn't happen here. Well, it didn't happen. There was a specific statute. There was two arguments that have been presented, and you seem to conflate the statutory stays and the equitable stays. The judge concluded that because of improper conduct from Mr. Sycamore and the LLC, that that should count as an equitable stay. The statute specifically enunciates, however, I think 78-5B-202, that there is a separate provision for statutory stays, and the statutory stays, I think, come up, if you total the math, I think it comes up to one year and 364 days. And so that one year and 364 days, even if you're right on the Gilead case, that would affect the extension of the operation of whatever judgments involved, correct? No. You've never argued otherwise. We have. No, you haven't. Okay. So in your reply brief, you say, I'm not trying to argue. I shouldn't say that. In your reply brief, you say, yeah, we have. We have absolutely argued that there shouldn't have been any equitable stays. Oh, I see. I'm sorry. He keeps saying, I know that. I'm arguing about a statutory stay. You're correct. That's not what I was saying. All right. What I was saying is it doesn't matter, because none of the stays went into effect until the time had already expired. If you look at the 2015 judgment, it doesn't really matter. That is correct. If you say the 2015 judgment matters, that goes, I'm not a supreme mathematician, but even I can add eight years to 2015 and 2023. And if I add one day shy of two years, you're in 2025. And so in 2024, the termination of the charging order would have preceded the expiration of the 2015 judgment with the addition of a year and 364 days. And this is where I think the Court has to take a very close look at the timing of when these stays were issued with regard to the operation of law. Those stays took place when the first appeal was filed, which is in 2020. That's a 57-day window. They don't file within that 57-day window. The next stay comes after the 2023 date. And so that doesn't matter. So the only thing that matters, that's why we didn't argue the statutory, the only thing that matters is equity, and they were able to collect the entire time. And so as a result, Gilead makes it very clear, unless you're somehow precluded, you don't get there, which is why we come, and I'm almost out of time, so I'm talking fast, which is why we come to the issue of the second item, this equitable tolling. No Utah court in the history of the State has ever applied equitable tolling when the dates were known. And I would note for the Court, there was a case that was issued 35 days ago by the Court of Appeals. It is not even published yet. It is a slip of opinion. I've got the citation for you if you would like it. You can submit a 28-J letter. I'm sorry? You can submit an authority afterwards. We will. I just want the Court to know that it came out. But the whole point here is that even as of 35 days ago, it is consistent. And in this case, all they had to do is file a motion. That's it. That's all they had to do. Every single case that they identify for this Court predates the Renewal Act. The Ford opinion, even Gilead, all of those opinions predate this Act. It was created in 2011. There is simply no ability for the Court to look at this language and say, oh, we're going to apply some equitable issue here. It doesn't work that way. Not with the statute. I see I'm out of time. Are there any other questions? Thank you, Counsel. Good morning, Your Honors, and may it please the Court. Alan Moritzen for Earth Grains. Covered a fair amount of ground this morning. I think the Court can resolve this appeal quite straightforwardly based on the standard adopted in GILDEA, which was in 2015, four years after the renewal statute was passed. And the standard in GILDEA states that a judgment debtor cannot assert a judgment's expiration as a defense if the judgment debtor acts in bad faith to prevent the judgment creditor from enforcing the judgment. That principle is grounded in equitable estoppel. It's what Judge Kimball, who has lived with this case for more than 15 years, relied upon, at least in part, to hold that the judgment had not expired, or at least that the sycamores were prohibited from arguing the judgment's expiration as a defense because they had engaged in bad faith conduct with respect to the judgment creditor's efforts to enforce the judgment. And if you look at – and this ruling was issued on November 2, 2018, more than four and a half years after the original charging order had been put into place. So over that entire period of time, the sycamore family had paid exactly $0 on the judgment, despite Earthgrain's consistent efforts to collect on the judgment. And if you look at page 258 of the first volume of Appellant's appendix, you see Judge Kimball expressly finding that the sycamore family engaged in willful contempt of the charging order. And based on that willful contempt, they had engaged in bad faith conduct. Are you saying you never needed to renew them? On this doctrine, we did not. Essentially, the judgment debtor is precluded from challenging the expiration of the judgment when it acts in bad faith to prevent enforcement of the judgment. That's the standard Gildia adopted in 2015. They applied it in Gildia. They, in that case, chose not to find that Wells Fargo had engaged in bad faith. But here you have the poster child example. I read the district court almost using that as a fallback position, but you're leading with it. Is it your primary argument? I wouldn't call it my primary argument. I just think it's a clean way, based on Gildia and the standard that's set forth there, without having to disrupt or, you know, displace the court's findings on bad faith. How clean is it? Nobody ever knows what the answer is to whether you have to renew that way until you get some sort of a bad faith finding. That doesn't seem to comport with what the Utah legislature would want. Well, I understand the concern, and it is risky to rely on a bad faith finding. Why did you? Why did you not file earlier? Yeah, that's a good question, and I don't have a good answer for you. But all I can say is that Gildia says that the judgment debtor can't act in bad faith with respect to enforcing the judgment, and then turn around and say, hey, it's expired. Your time's run out. And that standard is satisfied here. With respect to the statutory analysis, Judge Bachrach, you hit on the point, I think, which is if you go to 202, you see a statutory enunciation of a tolling period, basically saying if enforcement of the judgment is stayed, then that adds to the duration of the judgment for purposes of the renewal statute. And so here we had a stay entered on March 30, 2020, that prohibited the receiver from moving forward with liquidating the LLC's real property, which was, according to both the receiver and the district court, the only feasible way to enforce the judgment at that time. That stay remained in existence until March 8, 2022. And then the 21-day stay when counsel withdrew. Our math, Your Honor, may not entirely align. I have 729 days. No, no, no. I think that that is one day less than two years, right? And so even if we consider September 1, 2023, as the expiration date for the amended judgment, once you add the statutorily authorized stays to that time period, you end up on August 9, 2025, more than a year. But his argument is that we don't look at the 2015 judgment. We will look at the 2012 judgment. I understand that that's – What's your rejoinder to that? My rejoinder to that is that original judgment is to be – is always used as a comparison mechanism. It's a comparison word, right? The original versus what? And here, given that the term original judgment is used in the Renewal of Judgment Act, it makes sense to consider the original judgment to be contrasted with the renewed judgment, not – So it sounds like you agree with him on the applicability of the language for the – refers to the original judgment, which is only present, as I understand it, in the renewal provision. It's not present in the provision saying that a judgment lasts eight years. And so I think, as I understand it, one of his arguments is that you don't look at just the pure existence of eight years from 2015 because you only look at the original judgment. So you disagree with him on maybe – on the significance of the original judgment. But it sounds like there is implicit agreement that at least we have to consider the meaning of original judgment in determining whether a judgment lasts eight years. Well, I – and this is partly why I led with the GILDEA standard, because I think it's a little bit messier. But I'm certainly not conceding that the amended judgment is not the relevant judgment for purposes of 1802. And if that's true, then why do we care what original judgment means? Because the phrase original judgment is not in the provision saying that a judgment lasts eight years. Well, the – That could mean that, well, if it's not an original judgment, it's not renewable. You know, it's not the original judgment. But it's something. Well, and my point is that you would expect additional guidance from the legislature if it was intending to say that no amended judgment could ever be renewed. Well, you don't – why do you even care if the amended judgment can be renewed? You win, even if the 2015 judgment is never renewable. Well, we're – if it's never renewable, then with the statutory stays, we are coming up on August 9th, 2025. But the issue before us is whether or not the motion to terminate the charging order in 2024 was premature. Fair enough. And I understand that. I mean – You don't want to – you want to win the war and maybe lose the battle. Well, we want to win both, as the case may be. But I think if the court were to go that route without addressing the question of renewal, we would find that, you know, acceptable, I suppose, because we still prevail. But I think the larger point is either under GILDEA, which, again, has no stopping point when you engage in bad acts, or under the notion that the Renewal of Judgment Act applies to both amended judgments and original judgments. You know, we are entitled to that additional time that we would be entitled to. And, again, this goes back to the intransigence that we have been dealing with for going on 15 years now in trying to collect this judgment. Right? Most of these cases arise when a judgment creditor sits on his hands for 6 years or 7 years and then says, oh, wait, I have a judgment, I'm going to go enforce that. That's not this case. Right? We have been actively engaged in collection-slash-enforcement efforts since the judgment was initially entered in 2012 and the amended judgment was entered in 2015. Counsel, could I ask you, while you're on original judgments – Yes. And we leave that. The preceding paragraph 1, a motion is filed within the original action. Yeah. How do the words original action tie in your mind, and how should we use those words in interpreting what original judgment? I'm glad you asked that, Judge Phillips, because I think if you look at GILDEA, what you see is a description of how this used to work in Utah. Right? This used to work via a separate action. So you had the first case, and then you said, hey, I'm going to go enforce my judgment, but I have to initiate a new proceeding in order to do that. And in our view, that's why the legislature was using original, both an original action and an original judgment, to differentiate between, hey, you used to do this with a separate action. Now you do it within the same action. And so when it says original action and original judgment, it simply means the operative judgment within the existing action. Right? Is it a vestige then, or does a creditor have the option of the new post-2011 or proceeding under the pre-2011 file and other action? Are both available to a creditor still? My understanding is that both are not available. Then why have the original action talk? You know, I honestly think that it is, and if you look at GILDEA, and I would encourage you to read this description, because they actually highlight the word original in their discussion of this and seem to be suggesting that the legislature was trying to draw this distinction, even though, again, it was no longer going to be operative, but it was telling litigants, hey, we've been doing this for 75 years a particular way. We are changing the way we do it. And the way we do it now is you stay within the original action. And I will tell you that there have been some recent attempts to amend this series of statutes, which are not the model of clarity, part of which is to delete the word original. Well, whatever gave the pre-2011 system of filing another action, did that get repealed? I don't – I believe that it was judicially imposed, that it wasn't statutory. But I'm saying I believe it for a reason. I'm not positive whether the prior statute was repealed. My only point is I think that that is the best way to understand why they were using the word original. And it's because – I mean, to my mind, it makes a lot more sense to give it that understanding, given the background and the context, than to state that amended judgments – I mean, imagine an amended judgment is issued six months later or a year later. It's strange to me to suggest that the Utah legislature would say, we're just going to ignore any kind of renewal process when it comes to amended judgments, even though they become the operative judgment, even though they supersede the original judgment by definition. We're just not even going to address that. That makes a lot less sense to me than to say they were using original to differentiate between this new proceeding and the old proceeding. Isn't what you just explained a pretty good argument for your adversary about why GILDEA really doesn't have the meaning that you attached to it? Because GILDEA is relying on free, which preceded – which was decided under the regime that in order to renew a judgment, you had to file an enforcement action. And so his argument is, well, equitable and stockhold equitable doctrines are predicated on the notion that you are precluded from taking the desired action because of misconduct of the adversary. And there was nothing to stop, even if there was obstruction and improper transfers to Mr. Sycamore's wife, etc. There was nothing to stop Earth Grains or its predecessor from filing a motion to renew the judgment. I mean they had nothing to stop you all from doing that. And that was – and GILDEA, which held that there was not equitable stockholding in that case, was relying on free in the excerpt that you're relying on. So where does that whole explanation that you gave give ammunition to your adversary on why GILDEA is inapplicable? Well, just to clarify, the discussion I'm referring to from GILDEA is in talking about why the Renewal of Judgment Act was implemented and how it changed – No, not today. I mean in your brief. You're relying – and district judges rely on GILDEA. Well, let me just say the doctrine of equitable estoppel, even though rooted in free, remains viable. Because this is four years – excuse me, Your Honors. This was four years after the Renewal of Judgment Act was passed. So the Court could have easily said, look, equitable estoppel doctrine no longer applies because now you can renew. Yeah, that's my question. Was the judge just wrong in applying GILDEA? No, because – read GILDEA. I mean GILDEA is very clear that equitable estoppel as a doctrine in this context continues to apply with full force. And you look at the argument. GILDEA said, hey, Wells Fargo acted in bad faith. And I see my time's up. Let me just wrap up this thought. Wells Fargo acted in bad faith by filing an answer and asserting defenses and asserting counterclaims. The Court could have said estoppel doctrine no longer applies because we have the Renewal of Judgment Act. It didn't say that. It analyzed whether the evidence before the Court showed bad faith. It remains a viable doctrine and fully enforceable. For those reasons, we ask that the Court affirm. Thank you, counsel. Time's expired. Counselor excused, and the case shall be submitted. Thank you. I don't think you had any rebuttal. Oh, I used it all. In that case, I guess I'm done. I thought I saved some, but I missed it. Okay.